UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re MICHAEL H. CLEMENT CORP.,
a California corporation,

    Debtor.
_____/
FRANK C. ALEGRE, FRANK C. ALEGRE, SR.
AND HELEN C. ALEGRE, as Trustees of the
FRANK C. ALEGRE AND HELEN C. ALEGRE
REVOCABLE TRUST,

    Appellants and Cross-Appellees,

No. C 10-1028 PJH/10-1030 PJH
Bankr. Case No.  09-43502 LT

    v.

**ORDER RE: CONSOLIDATED APPEALS**

MICHAEL H. CLEMENT CORP.,

    Appellee and Cross-Appellant.
_____/

    Both parties, the Alegres and debtor Michael H. Clement Corporation ("MHCC" and/or "debtor"), appeal the bankruptcy court's order denying the Alegres' motion for an order deeming a lease rejected, and the bankruptcy court's subsequent orders denying both parties' motions for reconsideration of that order.  Because the appeals in essence constitute cross-appeals of the same orders and issues, the court ordered consolidated briefing.[1]  For the reasons that follow, the court AFFIRMS the decisions of the bankruptcy

---

[1] Because the Alegres filed their notice of appeal first and therefore are the appellants in the earlier-filed case, the court noted that it would treat the Alegres as the appellants and debtor as the cross-appellant.

court.

## BACKGROUND

**A.     Procedural Background**

This appeal stems from the bankruptcy court's orders in the main bankruptcy case regarding real property located at 3500 Wilbur Avenue in Antioch, California ("the Wilbur property"). On April 28, 2009, debtor MHCC filed a Chapter 11 bankruptcy petition. Subsequently, on September 4, 2009, the Alegres filed a motion for an order from the bankruptcy court deeming the debtor, MHCC, to have rejected a lease of the Wilbur property under Bankruptcy Code § 365(d)(4).

With their motion, the Alegres contended that MHCC was the lessee of the Wilbur property, and that it was required to assume the lease no later than August 26, 2009, one hundred twenty days after it filed its bankruptcy petition, and had not done so, nor had it sought an extension of time to do so.[2] The Alegres thus asserted that MHCC was required to immediately surrender the Wilbur property.

MHCC opposed the motion, and the bankruptcy court held a hearing on October 5, 2009, and in an October 14, 2009 memorandum decision, denied the Alegres' motion.[3] The Alegres filed a motion for reconsideration, and MHCC filed its own countermotion for reconsideration challenging certain findings and conclusions made by the bankruptcy court in its memorandum decision. On January 13, 2010, the bankruptcy court denied both motions for reconsideration.

The Alegres and MHCC appealed, and both parties elected to have this court hear the appeal rather than the Ninth Circuit Bankruptcy Appellate Panel.

---

[2] The assumption or rejection of a lease under § 365 is accomplished via a noticed motion before the bankruptcy court, and is subject to court approval. *See Pacific Shores Development LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065 (9th Cir. 2004).

[3] On November 5, 2009, the bankruptcy court signed the order denying the motion.

**B.     Bankruptcy Court's Factual Findings**

In its October 14, 2009 memorandum decision following the October 5, 2009 hearing on the Alegres' motion to deem the lease rejected, the bankruptcy court set forth its factual findings as follows:

> The Debtor [MHCC] purchased certain real property located at 3500 Wilbur Avenue, Antioch, California (the "Wilbur Avenue Property") in 1985. The Debtor is a licensed contractor and manufacturing company and operates its business on the Wilbur Avenue Property. Michael H. Clement ("Clement"), the president and sole shareholder of the Debtor, and his family also reside on the Wilbur Avenue Property.
>
> On January 12, 2001, the Debtor entered into an agreement to sell the Wilbur Avenue Property to Alegre for $1.3 million (the "Sale Agreement"). Close of escrow was scheduled for October 31, 2001. As a pre-condition to the close of escrow, Clement was required to obtain certain entitlements for improvement of certain real property located on Holland Tract Road in Knightsen, California (the "Holland Tract Property"). Clement appears to have anticipated moving the Debtor's business operations to the Holland Tract Property when the improvements were completed. Clement failed to obtain the entitlements, and escrow did not close within the scheduled time.
>
> The parties continued to negotiate and in 2003 entered into a second agreement, entitled Rental and Development Agreement (the "RDA"). The RDA recites that the Debtor and Clement will sell the Wilbur Avenue Property to Alegre through a two-way Internal Revenue Code Section 1031 exchange. (RDA, ¶ (2)) Thereafter, the Debtor will have the option to continue to occupy the Wilbur Avenue Property rent free until thirty days after a certificate of occupancy has been issued for the Holland Tract Property or an equivalent facility. (RDA, ¶ (5)) Alegre agrees to provide the funds to acquire and build out the Holland Tract Property up to $1.3 million. (RDA, ¶ (8)(c)) Title to the Wilbur Avenue Property is to be taken in Alegre's name pending completion of the Holland Tract Property project and 1031 exchange. (RDA, ¶ (10))
>
> The RDA further provides that, in the event Alegre does not complete the build out of the Holland Tract Property within two years, the Debtor will have the option of buying back the Wilbur Avenue Property for $1.3 million less the commission paid by the Debtor. (RDA, ¶ (12)) Alegre agrees that, over and above the $1.3 million to be spent on the acquisition and build out of the Holland Tract Property, he will provide the Debtor and Clement with additional product and services with a value of $104,000.
>
> In the event the Holland Tract Property project has not been completed within 15 months from the date of the RDA and the Debtor wishes to continue to occupy the Wilbur Avenue Property, this $104,000 obligation will be applied as a credit against rent, to be calculated at $5,000 per month for months 16 through 24 and at $7,000 per month thereafter. When the credit is exhausted, the Debtor may continue to occupy the space at a fair market value rent. (RDA, ¶ (20))
>
> The intended 1031 exchange was never accomplished. However, two

3

days after the RDA was executed, the Debtor executed a deed transferring title to the Wilbur Avenue Property to Alegre, and the deed was recorded.[4] Alegre paid $1.3 million, less the commission, to or on behalf of the Debtor in connection with the transaction. At some point, the Debtor acquired title to the Holland Tract Property.[5] After executing the deed transferring title to Alegre, the Debtor remained on the Wilbur Avenue Property, making no out-of-pocket payment of rent. The $104,000 in rent credit was exhausted in or about May 2006. The Debtor has remained on the Wilbur Avenue Property since that time without paying rent.

In February 2006, the Debtor and Clement sued Alegre in state court, seeking, among other things, to rescind the sale of the Wilbur Avenue Property to Alegre. Trial was set for May 2009. The Debtor filed this bankruptcy case on April 28, 2009, presumably in the hope of delaying the trial. This effort was unsuccessful, the trial took place as scheduled, and judgment was rendered in July 2009 adversely to the Debtor. A copy of the Statement of Decision has been provided to the Court. In the Statement of Decision, the state court judge holds that the Debtor cannot rescind the sale because it is unable to repay Alegre for the approximately $1.3 million sale price. In August 2009 the Debtor filed a notice of appeal from the judgment, and that appeal is pending.

The chapter 11 case has been pending for 163 days, and the Debtor has not filed a motion to assume the lease of the Wilbur Avenue Property or moved to extend the time for doing so.

**C.     Bankruptcy Court's Decisions**

   **1.     Denial of the Alegres' Motion to Deem Lease Rejected**

In their motion, the Alegres contended that the RDA's lease provisions gave rise to a nonresidential lease of the Wilbur property. They argued that, accordingly, MHCC was required to assume or reject the Wilbur lease within 120 days after its bankruptcy filing under Bankruptcy Code § 365(d)(4), which it had not done. As a result, the Alegres asserted that the lease should be deemed rejected, and that MHCC should be required to

---

[4] The bankruptcy court noted that MHCC "contend[ed] that the sale of the Wilbur Avenue Property was never consummated and that [MHCC] is still the owner of the property." It found, though, that:

> This contention is untenable. The Court has been provided with a copy of the recorded deed transferring title to Alegre. In addition, the complaint filed by the Debtor, seeking to rescind the RDA, affirmatively alleges that sale escrow closed and that Alegre is the owner of the Wilbur Avenue Property.

[5] The bankruptcy court noted that MHCC "listed the Holland Tract Property as an asset on Schedule A of its Schedules of Assets and Liabilities."

4

vacate the property.  Alternatively, the Alegres contended that MHCC was not entitled to remain on the property without paying rent.

MHCC, on the other hand, argued that the Wilbur lease was residential because Clement and his family lived on the property.  Because it was a residential lease, MHCC argued that it was not required to assume or reject the lease within 120 days under § 365(d)(4).  MHCC further contended that even if the lease of the Wilbur property was nonresidential, because the lease provisions were so entangled with other provisions of the RDA, it did not constitute a bona fide lease that MHCC was required to assume or reject under § 365(d)(4).

The bankruptcy court found against MHCC, thus agreeing with the Alegres, that the Wilbur property was nonresidential, finding that it could not be characterized as residential for several reasons.  The court noted that despite the fact that it was undisputed that Clement and his family lived in trailers on the property in violation of the zoning laws and had apparently done so for a long time, it was also undisputed that the property was located in a heavy industrial zone and could not legally be used as a residence.  It further noted that the primary use of the property was commercial.  The bankruptcy court examined numerous relevant bankruptcy cases, and ultimately held that the Wilbur property could not be characterized as residential simply because the Clement family lived on it.

However, the bankruptcy court held in favor of MHCC and against the Alegres in determining that the lease was not a bona fide lease, and therefore was not subject to § 365(d)(4)'s requirements.  The bankruptcy court considered the key Ninth Circuit cases on point, and first, contrary to MHCC's arguments, held that the Wilbur lease was not simply a disguised financing lease, thus exempt from § 365(d)(4). In support, it found that "[t]he rent to be paid [under the RDA] was not tied to the funds necessary [to] acquire or develop the Wilbur Avenue Property."  It further found that, "the RDA states that, after a specified period of time, if the Debtor wishes to remain on the Wilbur Avenue Property, the parties must

5

agree on a fair market rate rent."

However, contrary to the Alegres' contentions, the bankruptcy court found that the Wilbur lease also was not a bona fide lease. In support, the court found that there was no fixed term for the lease; MHCC had owned the property for many years before executing the RDA; the RDA gave MHCC the right to reacquire the property provided the sale price could be refunded; and MHCC had the right to remain on the property indefinitely assuming it could pay the Alegres a fair rental rate.

In sum, because the bankruptcy court concluded that the RDA's lease provisions did not give rise to a bona fide lease, it held that MHCC was not required to assume or reject the lease pursuant to § 365(d)(4). Nevertheless, the court agreed with the Alegres that MHCC was not entitled to continue to occupy the Wilbur property rent-free, and directed the parties to meet and confer regarding a fair rental rate.[6]

### 2.     Denial of Parties' Motions for Reconsideration

Following the bankruptcy court's order denying the Alegres' motion, both the Alegres and MHCC filed motions for reconsideration. The Alegres argued that the bankruptcy court erred in determining that that the RDA lease provisions did not create a bona fide lease. In support, the Alegres noted that the bankruptcy court had rejected MHCC's contention that it owned the Wilbur property, and had also concluded that the RDA did not constitute a disguised financing agreement.

The Alegres further challenged the bankruptcy court's finding that the RDA appeared to give MHCC the right to remain on the property indefinitely as long as it paid a fair market rent. The Alegres argued that such a finding constituted manifest error under California law because state law did not permit a lease of infinite duration. They thus argued that under state law, MHCC possessed a month-to-month tenancy of nonresidential property that,

---

[6] The parties were unable to agree on the fair rental rate, and further motions and hearings ensued. After a hearing, on March 12, 2010, the bankruptcy court held that the fair rental rate was $9,450 per month, and that MHCC owed the Alegres rent dating back to December 1, 2009.

6

contrary to the court's conclusion, constituted a bona fide lease subject to Bankruptcy Code § 365(d)(4).

The court denied the Alegres' motion for reconsideration on the papers, concluding that "the RDA appears to have created a hybrid contractual arrangement between [MHCC] and Alegre, part lease and part property right." The court further held:

> It would be contrary to the expressed intent of the RDA to characterize the Debtor's right to remain on the Property as a month-to-month tenancy. Such a right would be subject to loss at any time at Alegre's discretion, even if the Debtor were current on the rent. In any event, for purposes of this motion, the Court makes no final ruling as to the nature of the rights created by the RDA. The Court simply holds that the Debtor's failure to assume or reject the lease-like provisions of the RDA does not result in the automatic rejection of the Debtor's right to remain on the Property. However, as stated in the Memorandum, the Debtor must pay the fair market rental rate for doing so.

The court then turned to MHCC's motion for reconsideration, which it also decided on the papers. MHCC requested the bankruptcy court to reconsider its determination that the Wilbur property constituted nonresidential real property, and that the RDA was not a disguised financing lease. The bankruptcy court rejected both requests, and denied MHCC's motion as well.

First, it rejected MHCC's argument that the state court's dismissal of a prior unlawful detainer action filed by the Alegres against MHCC somehow demonstrated that the zoning of the Wilbur property indeed permitted residential use. The court noted that there was evidence that residential use of the property violated the Antioch Municipal Code, and that it was not clear that the unlawful detainer action even involved the issue regarding the use of the property for residential purposes. Finally, the court found that there was nothing in the RDA suggesting that the parties envisioned the continued residential use of the Wilbur property.

The bankruptcy court also denied MHCC's motion to the extent it suggested the RDA was in fact a financing lease based on the interrelationship of the Wilbur property rent and the Holland Tract project. In rejecting MHCC's arguments on reconsideration, the court found that

7

> More relevant was that, once rent began to accrue, the RDA set a rental rate of $5,000 per month initially, increasing to $7,000 thereafter, still later to be set at the fair market rental rate. These provisions appear to be linked to the value of the Debtor's use of the Property, not to any financing arrangement.

## ISSUES ON APPEAL

The Alegres argue on appeal that the bankruptcy court erred when it held initially and on reconsideration that the RDA lease provisions did not give rise to a month-to-month tenancy under California law, and thus was not a bona fide lease subject to Bankruptcy Code § 365(d)(4).

MHCC argues on appeal that the bankruptcy court erred when: (1) it found that the Wilbur property was nonresidential property; (2) it found that there were no disputed material factual issues requiring a hearing pursuant to Federal Rules of Bankruptcy Procedure ("FBRP") 9014 in conjunction with its motion for reconsideration; and (3) it found that MHCC must pay the fair rental rate of the Wilbur property to the Alegres to remain in possession of the property.

## DISCUSSION

**A.   Standard of Review**

This court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law *de novo*.  *See Microsoft Corp. v. DAK Indus., Inc.* (*In re DAK Industries, Inc.*), 66 F.3d 1091, 1094 (9th Cir. 1995).  The court reviews the bankruptcy court's denial of a motion for reconsideration for an abuse of discretion.  *Balla v. Idaho State Bd. of Corr.,* 869 F.2d 461, 464 (9th Cir. 1989).

**B.   Legal Standards**

Bankruptcy Code section 365(d) provides in pertinent part:

(d)(1) . . . .

(2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee[7] may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the

---

[7] In Chapter 11 bankruptcy cases, such as MHCC's, a debtor in possession has the right to exercise the powers afforded the "trustee" under § 365.  *See* Bankruptcy Code § 1107(a).

8

confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

. . . .

(4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of–

    (i) the date that is 120 days after the date of the order for relief; or

    (ii) the date of the entry of an order confirming a plan.

(B)(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

    (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

The purpose of § 365(d)(4), the provision primarily at issue in these appeals, is to protect lessors from delay and uncertainty by forcing the trustee or debtor-in-possession to act quickly to assume unexpired leases. *City of San Francisco v. Walsh (In re Moreggia)*, 852 F.2d 1179, 1185 (9th Cir. 1988). However, "[o]n the other side of the equation, to ensure that the bankrupt estate is not unwittingly burdened with liabilities, an affirmative act of assumption by the trustee is required to bring executory contracts and unexpired leases into the estate." *Id.*

**C.   Analysis**

At the outset, the court notes that the parties' arguments on the first two issues are nearly identical to their arguments before the bankruptcy court.

    **1.   Whether the Lease was a Bona Fide Lease**

The Bankruptcy Code does not specify what constitutes a lease under § 365. *Baker v. Harris Pine Mills (In re Harris Pine Mills)*, 862 F.2d 217, 220 (9th Cir. 1988); *In re Moreggia,* 852 F.2d at 1182. However, it is clear that notwithstanding the label given a particular contract, § 365 and its requirements apply only to "bona fide" or "true" leases. *In*

9

*re Moreggia*, 852 F.2d at 1182; *In re Harris Pine*, 862 F.2d at 220 n.5.

> Whether a 'lease' is [a] true or bona fide lease or, in the alternative, a financing 'lease' or a lease intended as security, depends upon the circumstances of each case. The distinction between a true lease and a financing transaction is based upon the economic substance of the transaction and not, for example, upon the locus of title, the form of the transaction or the fact that the transaction is denominated as a 'lease.'

*In re Moreggia*, 852 F.2d at 1182 (citing S.Rep. No. 989, 95th Cong., 2d Sess. 64, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5850).

What constitutes a lease as a matter of "economic substance" is generally determined by nonbankruptcy law, usually state law. *In re Harris Pine*, 862 F.2d at 220-21 & n. 5. However, an agreement that qualifies as a lease under state law is not necessarily a true or bona fide lease subject to § 365. *See In re Moreggia*, 852 F.2d at 1182. The bankruptcy court may independently determine whether the economic substance of the agreement is of a type anticipated by § 365. *See id; see also In re Harris Pine*, 862 F.2d at 220 n. 6.

Courts may consider several factors to determine whether in economic substance an agreement appears to be a bona fide lease contemplated by the Bankruptcy Code. *See In re Moreggia*, 852 F.2d at 1182-84 (discussing *In re PCH Associates*, 804 F.2d 193, 199 (2d Cir. 1986)). With regard to real property transactions, the court may consider, in particular, the parties' intent to enter into a typical landlord/tenant relationship and/or whether the lease was the product of "unique circumstances." *Id.*

The Alegres argue that the bankruptcy court's conclusion that the Wilbur lease did not constitute a bona fide lease was wrong as a matter of law, and that certain underlying factual findings were clearly erroneous. They contend that the lease was actually a "standard fare" lease, and dispute the bankruptcy court's finding that there was no fixed term for the lease, reiterating their argument that the lease constitutes a month-to-month lease under California law. The Alegres argue that any rent due under the RDA was not a "disguise" for anything but was compensation for the use of the land after the time the parties contemplated that MHCC would have moved from the Wilbur property.

10

The Alegres further argue that the bankruptcy court erroneously relied on the fact that MHCC previously owned the Wilbur property, and suggest that this factor is only relevant in determining whether a lease is actually a financing lease. Additionally, the Alegres challenge the bankruptcy court's finding that pursuant to the RDA, MHCC had the right to reacquire the property, arguing that this is only partially true because two conditions were required to occur before that happened: (1) the Alegres failed to complete the development of the Holland Tract; and (2) MHCC was able to pay the Alegres the price to reacquire the Wilbur property.

Reviewing the issue *de novo*, the court concludes that the bankruptcy court did not err in concluding that the Wilbur lease did *not* constitute a bona fide lease. Even if the lease could be considered a month-to-month lease under California law, as the Alegres assert, the bankruptcy court was entitled to determine whether the economic substance of the lease was of a type anticipated by the Bankruptcy Code. *See In re Moreggia*, 852 F.2d at 1182; *In re Harris Pine*, 862 F.2d at 220 n.6. The court did not err when it concluded that it was not. In so holding, the bankruptcy court considered key Ninth Circuit cases on point, *In re Moreggia & Sons, Inc.*, 852 F.2d 1179 (9th Cir. 1988), and *In re George*, 177 F.3d 885 (9th Cir. 1999), and held that this case fell "somewhere in between. . . the facts" in *George* and *Moreggia*.

This court's review of the pertinent evidence and authority leads it to the same conclusion. In *Moreggia*, the Ninth Circuit held that the "Lease Agreement" entered into by the parties in that case did not constitute a true lease. 852 F.2d at 1184. The agreement in *Moreggia* was a "peculiar" transaction between a displaced business and a non-profit corporation, which was created to aid a municipality in relocating industries uprooted by a redevelopment project. *Id.* The lessor sold bonds and used the proceeds to build a terminal in which the lessee "rented" space. *Id.* The rent was not related to the value of possessing the terminal space, and the lessee was not obligated to pay rent after the bonds were satisfied. *Id.* Instead, the terminal was built mainly to allow the municipality to

11

discharge a legal obligation to furnish space to displaced businesses. *Id.*

Although the Ninth Circuit agreed with the lessor that the lease qualified as a lease under state law, it nevertheless concluded that not every lease was subject to the automatic rejection provisions of § 365(d)(4). *Id.* at 1182-83. It quoted a passage from the Senate Report to 11 U.S.C. § 506(b)(6), stating that references to leases of real property applied only to bona fide leases and not to financing leases. *Id.* at 1182. Importantly, the *Moreggia* court concluded that the lease in question was the product of "unique circumstances" and that no true landlord/tenant relationship was ever intended or created. *Id.*

In *George*, unlike *Moreggia*, the court found that the agreement between the debtors and the City of Morro Bay possessed all the indicia of a landlord/tenant relationship. 177 F.3d at 888. The agreement in *George* concerned waterfront property that the debtors were leasing from the city, and required the debtors to provide public access to the harbor and the tidelands. *Id.* at 886-87. The Ninth Circuit concluded that the agreement constituted a "true" lease subject to § 365, despite the debtors' contention that the agreement was a "development agreement" under California Tidelands Trust Doctrine. *Id.* at 888. In support, it noted that the debtors were required to pay rent, which was tied to the Consumer Price Index (CPI) and the property's fair market value; that the debtors had no fee title to the land; and that the agreement noted that lessor would take control of the land if the lease were terminated and take title to improvements that were not removed within 60 days. *Id.*

This court's review of the evidence and the RDA leads it to the same findings of fact and conclusions of law reached by the bankruptcy court, including that that there was no fixed term for the lease here; that MHCC had owned the property for many years before executing the RDA; that the RDA gave MHCC the right to reacquire the property provided the sale price could be refunded; and that MHCC had the right to remain on the property indefinitely assuming it could pay the Alegres a fair rental rate. Based on these supporting

determinations, the court concludes, as did the bankruptcy court, that the RDA is more akin to the unique agreement at issue in *Moreggia,* and therefore did not create a true or bona fide lease subject to the requirements of § 365.

### 2. Whether the Lease was Residential or Nonresidential

Having affirmed the bankruptcy court's decision on the above issue, the court need not reach this issue on appeal to conclude that the Wilbur lease is not governed by § 365(d)(4). Nevertheless, the court has addressed the issue, and contrary to the bankruptcy court, concludes that the Wilbur lease was "residential," thus providing an additional reason that the lease was not subject to the requirements of § 365(d)(4).

Like the term "lease" discussed above, the Bankruptcy Code also does not define either the terms "residential" or nonresidential" as contemplated by § 365. 3 Collier on Bankruptcy § 365.05[3][a] (16th ed. 2010).[8]  Nor has this court located any circuit court cases on point.

The majority of the bankruptcy courts that have considered the definition of "residential," have narrowly construed it, focusing on the nature and use of the leased property. Dunaway, 3 Law of Distressed Real Estate § 35:7, Distinction between Residential Leases and Nonresidential Leases (Dec. 2010) (citing cases). In construing § 365(d), those courts generally hold that if people are living on the real property, it is residential in nature, despite the fact there may be a commercial purpose underlying the use. *See In re Bonita Glen II,* 152 B.R. 751, 753 (Bankr. S.D. Cal. 1993) (ground lease of

---

[8] The terms "residential" and "nonresidential" as used by § 365 were introduced into the Code in 1984. In 1984, Congress revised § 365 to strengthen the Code's protection of shopping centers. 130 Cong. Rec. S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch) *reprinted in* 1984 U.S. Code Cong. & Admin. News 590, 598-99. The 1984 Amendments to § 365 have been dubbed the "shopping center amendments" because they were proposed to "prevent tenant space in shopping centers from remaining vacant for long periods of time while a bankrupt tenant neither assumed nor rejected a lease." *Id.* It was Congress' concern about the uncertainty and delay for lessors in shopping centers that led to § 365 being amended to require a debtor to assume or reject a nonresidential lease within sixty days after the date of the order for relief. *Id.*

13

real property on which debtor later constructed apartment building was residential, and § 365(d)(4) did not apply to a lease for residential real property, even when the debtor used it for a commercial purpose.); *In re Lippman*, 122 B.R. 206, 210 (Bankr. S.D.N.Y. 1990) (leases of residential apartments located in a residential cooperative building were residential leases not subject to the 60-day automatic termination provisions of § 365(d)(4), even if some of the leases served a commercial purpose because it is the nature of the property, not the nature of the lease, which governs whether a lease is nonresidential); *In re Care Givers, Inc.*, 113 B.R. 263, 266 (Bankr. N.D. Tex. 1989) (since people were living at the nursing home on the real property, the lease was residential); *In re Independence Village*, 52 B.R. 715, 722 (Bankr. E.D. Mich. 1985) (even if an agreement regarding a life care facility for the elderly were considered a lease, the agreement would not qualify as nonresidential property because the facility housed several residents, notwithstanding the fact that the corporate debtor, as lessee, did not personally reside on the premises); *Matter of Terrace Apartments, Ltd.*, 107 B.R. 382 (Bankr. N.D. Ga. 1989) (where a long-term ground lease was operated as an apartment complex, the court found the lease residential in nature and that § 365(d)(4) was inapplicable).

However, a minority of courts have held that although land is used for dwellings, it could be classified as nonresidential due to the commercial purpose of the lease. *See In re Sonora Convalescent Hosp., Inc.,* 69 B.R. 134 (Bankr. E.D. Cal. 1986)). In *Sonora*, the court held that the use of real and personal property for a nursing home was nonresidential in nature due to the commercial purpose of the lease, especially the nature of the lease as income-producing. *Id.*; *but see In re Bonita Glen II*, 152 B.R. at 753 (criticizing the bankruptcy court's decision in *Sonora*). Additionally, another bankruptcy court held that a lease of a mobile home park to the debtor was a nonresidential lease notwithstanding that the debtor sublet the property by renting spaces to individual tenants, who took up residence in the park. *Matter of Condominium Administrative Services, Inc.*, 55 B.R. 792 (Bankr. M.D. Fla. 1985). The court reasoned that "there [was] no question that . . . the

individual tenants who reside in the park never had a lease with the [landlord], and the only lease involved in this controversy is the lease between the [landlord] and the Debtor, a lease which is clearly a commercial lease." *Id.* at 795.

MHCC argues on appeal that the bankruptcy court erred as a matter of law and with respect to its related factual findings on the issue. It contends that the parties always contemplated that the Clements would continue living on the Wilbur property, as they had done for many years. MHCC further argues that the bankruptcy court erred in finding that the Clements' residential use of the property violated the zoning laws, and also disputes the bankruptcy court's characterization of the property as "heavily industrial." MHCC argues that the zoning is unsettled, and because it is disputed, the bankruptcy court should have held an evidentiary hearing on the issue pursuant to FRBP 9014(d).

Given the dearth of controlling authority on the issue, and the Bankruptcy Code's failure to define the terms, the court notes that this issue is a close call. Under what appears to be the majority approach, the fact that Clement and his family lived on the property and would likely continue to live on the property, would be sufficient to render the lease "residential" in nature. The evidence is undisputed that the Clements have been living on the Wilbur property for more than twenty years, and that the Alegres were aware of this fact at the time the RDA was executed.

The bankruptcy court, however, took a broader approach by examining the local zoning laws in concluding that the lease was non-residential. While the bankruptcy court's approach was not unreasonable, reviewing the issue *de novo*, this court would conclude that the lease was "residential" for purposes of § 365, given the Clement family's long history of residential use of the property, the Alegres' awareness of this fact, and the fact that Michael Clement himself was a party to the RDA.

Accordingly, because the Wilbur lease was "residential," it was not subject to § 365(d)(4) for this additional reason. Because the court decides this issue in favor of MHCC, it declines to reach the issue regarding whether the bankruptcy court erred when it

15

1 failed to hold an evidentiary hearing on the issue.

### 3. Bankruptcy Court's Order re: Rent

In what appears to be a procedurally improper argument, MHCC contends that the bankruptcy court erred in determining that it was not entitled to continue to occupy the Wilbur property rent-free, and that it would need to commence paying rent to the Alegres. MHCC's argument is not entirely comprehensible, but it appears that it is arguing that the bankruptcy court lacks jurisdiction over a Chapter 11 debtor's [MHCC's] real property obligations where the debtor is simultaneously seeking relief related to the same real property before a state court.

The court rejects this claim for several reasons. First, it notes that MHCC's challenge appears to constitute an appeal of the bankruptcy court's March 12, 2010 order regarding rent, an order that MHCC failed to appeal. For this reason, it is not a proper appeal. Second, even if the court were to reach the issue, it finds MHCC's argument preposterous and unsupported, especially given the fact that the state trial court found against MHCC on the related issue. Finally, there is no question that the bankruptcy court possessed jurisdiction to oversee the administration of the Chapter 11 bankruptcy estate, including MHCC's obligations with respect to the Wilbur property, given that MHCC voluntarily filed a Chapter 11 bankruptcy petition subjecting itself to the bankruptcy court's jurisdiction.

For all of these reasons, this claim fails.

////
////
////
////
////
////
////

**CONCLUSION**

For the reasons set forth above, the court AFFIRMS the bankruptcy court's October 14, 2009 order denying the Alegres' motion for an order deeming the lease rejected, and its January 13, 2010 order denying both parties' motions for reconsideration.[9]

This order fully adjudicates the consolidated appeals and terminates all pending motions in both cases. The clerk shall close the files.

**IT IS SO ORDERED.**

Dated: February 25, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[9] Even though this court disagrees with the bankruptcy court's determination regarding the nature of the Wilbur lease as nonresidential, that issue does not impact the ultimate result, and the court affirms the bankruptcy court's denial of all of the challenged motions.